[No. A087820. First Dist., Div. Two. Dec. 4, 2000.]

MARGUERITE TREWEEK, Plaintiff and Appellant, v.
CITY OF NAPA, Defendant and Respondent.

222

**COUNSEL**

Roberta Brooks; Law Offices of Frank Worthington and Frank Worthington for Plaintiff and Appellant.

Thomas B. Brown, City Attorney, and David C. Jones, Deputy City Attorney, for Defendant and Respondent.

Law Office of Richard D. Jones, Gregory P. Palmer and Richard D. Jones for 36 California Cities as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

"An object is what it is." So stated the Court of Appeal in *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097 [80 Cal.Rptr.2d 720], waiving

aside concerns that its broad definition of "trail" under Government Code section 831.4,[1] would result in expansion of the term beyond recognition, providing a governmental entity "the incentive to call anything it wishes a 'trail' in order to qualify for section 831.4 immunity." (68 Cal.App.4th at p. 1103.) Here, we are confronted with the question whether a public boat dock ramp is unquestionably a "trail," immunizing a city from liability for the ramp's failure. We conclude that the ramp itself is not a "trail" under section 831.4 and that therefore the trial court erred in granting judgment on the pleadings on that ground.

### FACTS AND PROCEDURAL BACKGROUND

Marguerite Treweek (appellant) filed a complaint against the City of Napa (City), alleging she was injured as she walked from the Napa City Dock located near the intersection of Third and Main Streets, across a boat ramp, when the ramp failed and gave way, causing her to fall. She alleged City neglected its duty to maintain the dock and the ramp in a safe condition. City asserted various immunities, including that it was immune from liability pursuant to section 831.4, asserting that the boat ramp was a recreational "trail" as defined in the statute. On the ground that under section 831.4 City could not be held liable for injuries caused by a condition of the ramp, the trial court granted City's motion for judgment on the pleadings, dismissed appellant's complaint without leave to amend and entered judgment in favor of City. Appellant appealed.[2]

### DISCUSSION

1. *Standard of Review.*

■ "The construction and interpretation of a statute are a question of law, which the Court of Appeal considers de novo. [Citation.]" (*Dowden v. Superior Court* (1999) 73 Cal.App.4th 126, 128 [86 Cal.Rptr.2d 180].) ■ "A judgment on the pleadings is reviewed under the same standard by which a judgment following the sustaining of a demurrer is reviewed; the question is, assuming the truth of the pleadings, does the complaint state a cause of action. [Citation.]" (*Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1803-1804 [35 Cal.Rptr.2d 282].)

2. *Government Code Section 831.4.*

Section 831.4 provides: "A public entity, public employee, or a grantor of a public easement to a public entity for any of the following purposes, is not liable for an injury caused by a condition of:

---

[1] All statutory references are to the Government Code, unless otherwise indicated.

[2] City is joined on appeal by 36 California cities as amici curiae.

"(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas and which is not a (1) city street or highway or (2) county, state or federal highway or (3) public street or highway of a joint highway district, boulevard district, bridge and highway district or similar district formed for the improvement or building of public streets or highways.

"(b) Any trail used for the above purposes.

"(c) Any paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail, walkway, path, or sidewalk which constitutes a hazard to health or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads."

### 3. *Applicability of Subdivision (b).*

Subdivision (a) of section 831.4 applies only to unpaved roads; while "subdivision (c) applies to a paved trail, etc., on which an easement of way has been granted to a public entity and which provides access to an unimproved area." (*Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th 1097, 1100.) ■ Conceding that neither subdivision (a) nor (c) applies, City argues it is immunized by the provisions of subdivision (b), contending the ramp provides access to recreation and that the ramp may be used itself for recreational activities such as viewing the Napa River.[3]

Appellant argues initially that section 831.4, subdivision (b) does not immunize City, as it relates only to trails used for the recreational activities listed in subdivision (a) and does not extend to access trails—that is, to trails used solely for access to such activities where the trail is not itself used for a recreational activity. Appellant relies upon *Giannuzzi v. State of California,*

---

[3]Because we ultimately conclude that the ramp is not a trail, we need not address the assertion by City and amici curiae that recreational activities such as fishing or viewing the Napa River may be conducted on the ramp itself. However, we are aware of no facts in the record supporting this somewhat dubious assertion. Nor are we inclined to take judicial notice that the ramp itself may be used for purposes of viewing the scenic Napa River. Were we to conclude the ramp was a trail, whether it is commonly used for or even amenable to such activities would present a question of fact, not suitable on this record for judgment on the pleadings. (See *Hernandez v. Imperial Irr. Dist.* (1967) 248 Cal.App.2d 625, 627 [56 Cal.Rptr. 811]; *Giannuzzi v. State of California* (1993) 17 Cal.App.4th 462, 467 [21 Cal.Rptr.2d 335]; *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 418 [33 Cal.Rptr.2d 631].)

*supra,* 17 Cal.App.4th 462 (*Giannuzzi*), which contains dicta supporting her position. (*Id.* at p. 466.)

In *Giannuzzi,* the plaintiff motorcycle rider was injured within a state vehicular recreation park. The Court of Appeal affirmed the sustaining of the state's demurrer, holding that a trail need not provide access to anything for immunity to attach under section 831.4, subdivision (b), so long as the trail was being used for one of the activities listed in subdivision (a). Where it could be fairly inferred from the amended complaint that the plaintiff's purpose for being in the park was the recreational driving of his vehicle, and that he was injured during the course of that activity, the application of the statutory immunity was established as a matter of law. (*Giannuzzi, supra*, 17 Cal.App.4th at pp. 466-467.)

In reaching that conclusion, the *Giannuzzi* court recognized that the statute could plausibly be read in three ways: (1) as an access statute only, in which the "above purposes" language of subdivision (b) incorporates the recreational activities specified in subdivision (a) as to which access is provided; (2) in which subdivision (b) *has nothing to do with access. "According to this construction the 'above purposes' language of subdivision (b) simply picks up the recreational activities set forth in subdivision (a). As so read, a trail intended for hiking need not provide access to anything in order for the immunity to attach"* (*Giannuzzi, supra*, 17 Cal.App.4th at p. 465, italics added); (3) in which subdivision (b) encompasses both of these constructions. Under this third alternative, "access is one 'of the above purposes' for which a trail can be used. Hunting, hiking, riding, etc.—the recreational activities listed in subdivision (a)—are also 'purposes' for which trails can be used. The immunity granted by section 381.4 attaches to both." (17 Cal.App.4th at p. 465.) The court examined the statute's legislative history and concluded that "[t]he statute's evolution demonstrates that the second construction is the correct one." (*Id.* at p. 466.)

As the court explained: "When originally enacted in 1963, section 831.4 had two simple subjects of its immunity. Subdivision (a) dealt with '[a]ny unpaved road which provides access to fishing, hunting or primitive camping, recreational or scenic areas.' Subdivision (b) read in its entirety: 'Any hiking, riding, fishing or hunting trail.' (Stats. 1963, ch. 1681, § 1, p. 3273; see Stats. 1968, ch. 714, § 1, p. 1416.) This early fossil record reveals no mention of 'access' or 'above purposes' in subdivision (b). [¶] Amendments passed in 1970 expanded subdivision (a) to reach '[a]ny unpaved road which provides access to fishing, hunting, camping, hiking, riding, water sports, recreational or scenic areas,' and reframed subdivision (b) as it presently reads. (Stats. 1970, ch. 807, § 2, p. 1530.) [¶] In 1972, subdivision (a) was

further broadened by inserting the words 'including animal and all types of vehicular riding.' (Stats. 1972, ch. 1200, § 2, p. 2323.) [¶] Subdivision (c) was added in 1979. (Stats. 1979, ch. 1010, § 1, p. 3434.)" (*Giannuzzi, supra,* 17 Cal.App.4th at p. 466.)

Based on this legislative history, the Court of Appeal reasoned that "[t]he exclusive emphasis of subdivisions (a) and (c) of section 831.4 is, and has always been, access. Subdivision (b), however, has since its inception had a more substantive aspect, i.e., use of trails for certain recreational activities without regard as to how the persons involved came to be at the spot where injuries occurred. It is equally apparent that the 1970 amendment recasting subdivision (b) in its current form employed the 'used for the above purposes' language to serve as a shorthand incorporation by reference *only* of the recreational activities concurrently being expanded in subdivision (a). The only thing 'above' subdivision (b) is subdivision (a), and the most obvious 'purposes' thus incorporated would be the growing number of recreational activities listed in subdivision (a)." (*Giannuzzi, supra,* 17 Cal.App.4th at p. 466, italics added, fn. omitted.) The court noted that it had found nothing in the legislative history—including its review of the Governor's bill file—which was in the least inconsistent with its construction of the statute. (*Id.* at p. 466, fn. 3.)

The *Giannuzzi* court concluded that subdivision (b) precluded liability for injuries caused by the condition of trails used for the activities listed in subdivision (a). (*Giannuzzi, supra,* 17 Cal.App.4th at p. 467.) As the plaintiff's purpose for being in the state vehicular recreation park was the recreational driving of his vehicle, and he was injured during the course of that activity, the application of section 831.4 was established as a matter of law. (17 Cal.App.4th at p. 467.)[4]

*Giannuzzi* was followed by *Armenio v. County of San Mateo, supra,* 28 Cal.App.4th 413 (*Armenio*), in which Division Five of this district found the county immune under section 831.4 for injuries suffered by a bicyclist while riding on the Sawyer Camp Trail, a paved county trail, where the trail was enclosed by a fence and did not provide access to unimproved areas. (28 Cal.App.4th at p. 415.) Affirming summary judgment for the county, the court reasoned that the "plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property

---

[4]The *Giannuzzi* court also concluded that although the "purpose for which a road or trail was being used is ordinarily viewed as an issue of fact (*Hernandez* v. *Imperial Irr. Dist.*[, *supra,*] 248 Cal.App.2d 625, 627 . . .)," where all inferences from the amended complaint are that the plaintiff's purpose for being within the park was recreational and that he was injured while in the course of that activity, the application of the section 831.4 immunity was established as a matter of law. (*Giannuzzi, supra,* 17 Cal.App.4th at p. 467.)

for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' (Legis. committee com., 32 West's Ann. Gov. Code, *op. cit. supra,* § 831.2; p. 293 [citations].)" (*Id.* at p. 417.)[5] Relying upon *Giannuzzi, supra,* 17 Cal.App.4th 462, the appellate court rejected the plaintiff's claim that the statute was intended to apply only to roads or trails providing *access* to the recreational activities enumerated in subdivision (a) or to unimproved property and not to trails on which the activity takes place. (*Armenio, supra,* 28 Cal.App.4th at p. 417.) The court did not address or refer to *Giannuzzi*'s statement that subdivision (b) had nothing to do with access, but was limited to trails upon which the recreational activity enumerated in subdivision (a) itself was performed.

The *Armenio* court also held that the immunity afforded under subdivision (b) extended to paved trails. According to the court, "subdivision (b) refers to '[a]ny' trail. The logical inference of the all-encompassing 'any' in subdivision (b), particularly in relationship to the limiting adjectives in its sister subdivisions, is that the nature of the trail's surface is irrelevant to questions of immunity." (*Armenio, supra,* 28 Cal.App.4th at p. 418.)

Finally, *Armenio* held that although the purpose for which the trail is used was ordinarily a factual issue, where there was no dispute that the trail was intended to be used for hiking and riding it was a question of law.

Thereafter, in *State of California v. Superior Court* (1995) 32 Cal.App.4th 325 [39 Cal.Rptr.2d 1] (*Young*), Division Five followed its prior opinion in *Armenio, supra,* 28 Cal.App.4th 413, in holding the state immune from an action filed by a rider who had fallen off a horse on a trail in a state park. In so doing, the court used very broad language to describe the scope of the immunity at issue, stating: "It is also clear that the state is absolutely immune from liability for injuries caused by a physical defect of a trail." (*Young, supra,* 32 Cal.App.4th at p. 328.) Reiterating its *Armenio* analysis of the purpose of the immunity statute, the court stated: "In *Armenio,* we agreed with *Giannuzzi v. State of California*[, *supra,*] 17 Cal.App.4th 462 . . . ,

---

[5]The court relied upon a comment to section 831.2, a companion immunity statute to section 831.4. Section 831.2 provides immunity for an injury caused by a natural condition of any unimproved public property. The comment states: "[U]nder this section and Section 831.4, [a public entity] has an absolute immunity from liability for injuries resulting from natural conditions of a [public] park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails. [¶] . . . It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State." (Legis. Com. com., 32 West's Ann. Gov. Code (1980 ed.) foll. § 831.2, p. 293.)

which held that Government Code section 831.4 was not limited to roads *or trails providing access* to the various recreational activities listed in the statute—including animal riding—but extended the cloak of immunity to cover roads or trails used for those activities themselves. (*Armenio, supra,* 28 Cal.App.4th at p. 417; see *Giannuzzi, supra,* 17 Cal.App.4th at p. 466.) We also held that the trail immunity statute applied to any such recreational trail, paved or unpaved." (*Young, supra,* at p. 328, some italics added.) In the course of reiterating the holdings of *Giannuzzi* and *Armenio* that section 831.4 was not limited to access roads, but covered trails upon which the recreational activity itself was conducted, Division Five interpreted subdivision (b) to reach farther than *Giannuzzi* had recognized, to cover trails used for access as well as for the activity itself. In effect, although not explicitly acknowledging the distinction, the *Young* court adopted the third alternative interpretation of the statute posited in *Giannuzzi*: that "access is one 'of the above purposes' for which a trail can be used." (*Giannuzzi, supra,* 17 Cal.App.4th at p. 465; see *Young, supra,* at p. 328.) Consequently, the opinion in *Young* assumes that the immunity conferred by subdivision (b) encompasses both access and the enumerated recreational activities. (See *Young, supra,* at pp. 328-329.)

This broader interpretation was followed in two later cases from the Second District. In *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606 [70 Cal.Rptr.2d 504] (*Carroll*), the Court of Appeal affirmed summary judgment in favor of the county where the plaintiff was injured while rollerblading on a paved bicycle path. The Court of Appeal summarized *Giannuzzi, Armenio,* and *Young* as holding that "the immunity under subdivision (b) is *not limited* to 'access' trails, but extends to include a trail whose use itself is the object of the recreational activity." (*Carroll, supra,* 60 Cal.App.4th at pp. 609-610, italics added.)

In *Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th 1097, the court held that the immunity applied where a bicyclist sustained injuries when a portion of a city-owned paved bike path gave way. The *Farnham* court stated that the final draft of section 831.4, "gave total immunity for *any* trail used for recreational access, and a more limited immunity to paved trails, etc., on an easement that provides access to unimproved property." (68 Cal.App.4th at p. 1102, original italics.) These expressions of the scope of the immunity under section 831.4, subdivision (b) as *not limited to access trails* (implying that access trails are included within the immunity) (*Carroll, supra,* at p. 610) and as extending to *any* trail (*Farnham, supra,* at p. 1102), reflect the developing judicial perception that the coverage includes access trails, as well as trails used themselves for the enumerated recreational activities.

The view that subdivision (b) of section 831.4 provides immunity from liability for injuries on access trails is also reflected in the primary treatise

addressing government immunity from tort liability in this state. "Under [section] 831.4, neither a public entity not a public employee is liable for an injury caused by a condition of certain unpaved roads *and trails*, whether paved or improved, *that provide 'access* to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports,' and other types of 'recreational or scenic areas.' Whether a particular road or trail comes under this immunity is ordinarily a question of fact. [Citations.]" (2 Cal. Government Tort Liability Practice (Cont.Ed.Bar 1999) § 12:88, pp. 819-820, italics added.)

From the foregoing, we discern the following: No case directly confronts the argument made by appellant that section 831.4, subdivision (b) does not extend governmental immunity to claims made by persons using trails for purposes of access only. Rather, statements in the cases from *Giannuzzi* forward have been made in the context of rejecting the converse claim, that immunity extends *only* to access trails. Assuming the ramp is a trail and that its only purpose is access to recreation, dicta in *Giannuzzi* supports appellant's claim that it is not covered under subdivision (b), which covers only trails upon which the recreational activity may be conducted. However, since *Giannuzzi* every court addressing the scope of subdivision (b) has indicated that the "[a]ny trail" language of subdivision (b), includes trails used for access, as well as for the recreational activity itself. The Continuing Education of the Bar treatise on the subject adopts the broader sweep in its description of the reach of the statute without acknowledging any disagreement in the cases on this point.

The language of the statute is susceptible of the broader reading, to cover access trails. *Giannuzzi* does not suggest such a reading is implausible (*Giannuzzi, supra,* 17 Cal.App.4th at p. 465), nor does it indicate anything in the evolution of the statute implying that only the recreational activities themselves, but not the access purpose of section 831.4, subdivision (a) are incorporated into subdivision (b) by the language "used for the above purposes." (See 17 Cal.App.4th at pp. 465-466.) Although the legislative history is not inconsistent with *Giannuzzi's* reading of the statute to exclude trails which may be used only for access, nothing in that history compels such an exclusion. Nor can we find any convincing reason to exclude a trail used for access to the recreational activities described in subdivision (a) from subdivision (b) "purposes" for which "[a]ny trail" may be used. We therefore reject appellant's claim that the ramp cannot fall within the coverage of subdivision (b) because it was used only for access.

This is not, however, the end of our analysis, because the fact that a structure provides access to a recreational area does not necessarily mean it

is a "trail" within the meaning of the statute—that is, unless the meaning of the word "trail" is enlarged to cover *any* structure over or upon which people pass on their way to an area of recreational activity. We therefore turn to the question whether this expansive meaning may be attributed to the word "trail" as it appears in section 831.4.

The scope of the word "trail" was discussed in *Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th 1097, where the plaintiff argued that defining "trail" to include a bike path would result in expansion of the term beyond recognition, providing a governmental entity "the incentive to call anything it wishes a 'trail' in order to qualify for section 831.4 immunity." (*Id.* at p. 1103.) The court dismissed the argument on the ground that: "An object is what it is. For example, an adjacent parking lot does not become a trail by the simple expedient of calling it a trail. The design and use will control what an object is, not the name." (*Ibid.*) Dictionary and judicial definitions of "trail" and "ramp" do not suggest the words are synonyms or that trails and ramps are designed or ordinarily used for the same purpose.

The most pertinent definition of "trail" provided by the 18 Oxford English Dictionary (2d ed 1989) at page 363 is "a path or track worn by the passage of persons travelling in a wild or uninhabited region, a beaten track, a rude path." Webster's Third New International Dictionary (1981) at page 2423, similarly defines the term as referring to "a track made by passage (as through a wilderness or wild region) . . . a blazed or otherwise marked path through a forest or mountainous region." The reference to "paved" trails in subdivision (c) of section 831.4 and to "any trail" in subdivision (b) of that statute may, as we shall discuss in a moment, eliminate the need for a qualifying path or track to traverse wild or uninhabited regions, but it cannot reasonably be thought to eliminate the need for the trail in question to consist primarily of a path or track.

In *Carroll, supra,* 60 Cal.App.4th 606, the Court of Appeal affirmed summary judgment in favor of the county where the plaintiff was injured while rollerblading on a paved bicycle path. As described by the court, "[t]he South Bay Bicycle Path (the Path) stretches along the coast from Santa Monica through Redondo Beach. The Path is 19.2 miles long. It is located mainly on the beach, although at some points it runs adjacent to beachfront homes and sidewalks. The Path is paved, and is wide enough to support two-way traffic, with a yellow stripe down the center as a divider. Although the Path is designated as a 'bicycle path,' it is also used daily by walkers, joggers, skateboarders, rollerskaters, and rollerbladers." (*Id.* at p. 607.) The court framed the question presented as "whether a paved bicycle path qualifies as a 'trail' under the immunity provisions of Government Code

section 831.4." (*Ibid.*) It answered in the affirmative. (*Ibid.*) Apparently unable to find a dictionary definition of the term "trail" that did not also include a sense of a natural or unconstructed component, the *Carroll* court relied instead upon a synonym finder equating "trail" with "path" and a dictionary definition of "trail as a 'marked or established *path* or route . . . .' (Italics added.)" (*Id.* at p. 609.) A strategic use of ellipses allowed the court to ignore the balance of that definition as "esp. through a forest or mountainous region." (Webster's Collegiate Dict. (10th ed. 1995) at p. 1251.)[6] The court held that the path qualified as a "trail" under subdivision (b). (*Carroll, supra,* 60 Cal.App.4th at p. 609.) Next, the court cited *Armenio, supra,* 28 Cal.App.4th 413, and similarly concluded that the statute's use of the term "any" to modify "trail" included surfaced or paved trails as well as unpaved trails.

Revisiting the question in *Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th 1097, the same court that decided *Carroll* reiterated that full immunity applied to any trail, whether paved or unpaved and followed *Armenio* and *Carroll* in holding that a class I bicycle path[7] qualified as a trail under subdivision (b). (68 Cal.App.4th at p. 1103.)

We agree with *Armenio, Carroll,* and *Farnham* that the language of subdivision (b) covering "any trail" extends immunity to trails used for the described recreational purposes—including access to those recreational activities regardless of the trail's surface. We have no difficulty accepting extension of recreational trails immunity to trails such as the paved class I bike path running along the perimeter of a large park (*Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th at p. 1099), the paved Sawyer Camp Trail (part of the San Mateo County Trails Plan) (*Armenio, supra,* 28 Cal.App.4th at p. 415) or a 19.2-mile paved bicycle path stretching along the coast (*Carroll, supra,* 60 Cal.App.4th at p. 607). These bike paths seem to us to reasonably fall within the commonly understood meaning of the term "trail"—despite being paved.

It is, however, one thing to say that a bike path is a "trail" within the meaning of the statute and quite another to say a ramp is also such a "trail." "Path" is a synonym for "trail" (*Carroll, supra,* 60 Cal.App.4th at p. 609; see

---

[6]The complete definition provided for the word "trail" in the sense used in the statute is: "**3** . . . **b** (1): a track made by passage esp. through a wilderness; (2): a marked or established path or route esp. through a forest or mountainous region." (Webster's Collegiate Dict., *supra,* p. 1251.)

[7]" '[B]ikeways shall be categorized as follows: [¶] (a) Class I bikeways, such as a "bike path," which provide a completely separated right-of-way designated for the exclusive use of bicycles and pedestrians with crossflows by motorists minimized.' " (*Farnham v. City of Los Angeles, supra,* 68 Cal.App.4th at p. 1099, fn. 1, quoting Sts. & Hy. Code, § 890.4, subd. (a).)

also Roget's Internat. Thesaurus (3d ed.) § 655.3), but "ramp" is not. "The word 'ramp' has a common meaning and indicates a way or passageway connecting two different levels on an inclined plane. [Citations.]" (*Peterson v. Safeway Stores* (1960) 185 Cal.App.2d 24, 27 [7 Cal.Rptr. 924].) Thus a "boat ramp" is a construction connecting the shore to a boat or a dock or connecting a dock to a boat where the things connected are or, due to tidal action, may be at different levels. A ramp is therefore designed and used for a different purpose than a path or trail.

For us to allow that, simply because it leads from land to water the ramp in question is a "trail" would result in almost no limit on what might be considered a "trail" for purposes of the statute, so long as it provided "access" to recreational opportunities. Such an elastic definition would cover not only the ramp at issue here, but as well the boat dock and perhaps even the parking lot, as people regularly traverse both on their way to recreational opportunities on the Napa River. Conceivably, a "trail" so defined could include a sidewalk or even an elevator from which one might enjoy an ocean view. Calling a ramp connecting a parking lot to a boat dock a "trail" under subdivision (b) of section 831.4 stretches the definition too far.

Accordingly, we hold that, standing alone, a boat ramp is not a "trail" within the meaning of subdivision (b) of section 831.4.

It is important to note that we are not determining that a boat ramp, bridge or other structure may never be within the immunity afforded under section 831.4. City, which rests on the claim that the ramp in question is in and of itself a "trail" within the meaning of section 831.4, does not alternatively argue that, even if it is not, the ramp is nonetheless within the immunity provided by that statute because it is an *integral part* of a "trail." As an abstract proposition such an argument might have merit, as the policy considerations militating in favor of immunity might well apply to a ramp, bridge or other construction that is fully integrated into the sort of "trail" contemplated by the statute, and essential to the full use and enjoyment of that "trail" by the public.

The purpose of the immunity provided by section 831.4, as indicated in the legislative history and described in the cases, is to keep recreational trails open to the public.[8] Because provision of parks and recreational opportunities is a more peripheral function of government when compared to more

---

[8]"The plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public

fundamental functions of law enforcement, prevention and control of disease, fire or other natural or manmade disasters (5 Cal. Law Revision Com. Rep. (1963) pp. 490-493) and because it is a function which often brings in little, if any, revenue, it is not unreasonable to fear that the mere specter of liability might persuade public entities to close trails now open to the public if the immunity provided under section 831.4 did not apply to footbridges, wooden walkways, stairways, ramps or other constructions that are part of and essential to the ordinary use of an immunized "trail." (5 Cal. Law Revision Com. Rep., *supra*, at p. 490; see also *Farnham v. City of Los Angeles, supra*, 68 Cal.App.4th at p. 1103).)

Presumably, City does not advance this argument because the record before us does not show that the boat ramp in question is part and essential to the full use of a "trail." Indeed, given the posture of the case, we must assume the opposite. As noted, this appeal is from the grant of judgment on the pleadings, which we review under the same standard by which a judgment following the sustaining of a demurrer is reviewed. (*Boccato v. City of Hermosa Beach, supra,* 29 Cal.App.4th at pp. 1803-1804.) In other words, in determining whether the complaint states a cause of action we not only "deem to be true all material facts properly pled. [Citation.] *We must also accept as true those facts that may be implied or inferred from those expressly alleged.* [Citation.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368], italics added, fn. omitted.)

There is some confusion in the pleadings as to whether the ramp at issue connects the dock to a boat or instead connects a parking lot to a dock. As pertinent, the complaint simply alleges appellant was walking from the dock across the ramp, when it failed. In her various oppositions to the motion for judgment on the pleadings, appellant asserted that the "City Ramp allows members of the public to travel from a parking lot, along a short concrete incline, across the ramp itself, and onto a wharf." In her opening brief, appellant asserts she had just left the "Grand Romance," a paddle boat, and proceeded to walk up a dock ramp when the ramp failed. "The dock ramp, a metal, bridge-like structure, is used by the public for travel between a city controlled dock and a parking lot." In her points and authorities opposing judgment on the pleadings, appellant claimed she "was injured while walking up a movable plank that failed as she attempted to travel from a dock to a moored boat."

Nothing in the complaint or in any other pleading suggests that the boat ramp is connected at either end to a path arguably constituting a "trail"

use.' (Legis. committee com. 32 West's Ann. Gov. Code, *op. cit. supra,* § 831.2, p. 293; [citations]." (*Armenio, supra,* 28 Cal.App.4th at p. 417.)

within the meaning of section 831.4 and, as noted, neither does City make any such claim. The applicable standard of review, which obliges us to indulge all inferences in favor of the party against whom the motion for judgment on the pleadings was made, clearly bars us from inferring a fact that might *defeat* the claim of such a party.

In the absence of any reason to believe the ramp in question is an integral part of an immunized "trail," the policy considerations supporting immunity do not come into play. It is hard to imagine, for example, that City would close the ramp absent the extension of immunity under section 831.4. City makes no claim that it is immune from liability for injuries caused by a condition of the parking lot or the dock which the ramp connects and it is no more likely the ramp would be removed than that the parking lot would be closed if it were not within the immunity provided by the statute. Commercial as well as recreational users pass over the ramp and as it is used for both purposes, there may well be a financial incentive to keep the ramp open.

Although assumption of risk is not required for immunity to attach, users of recreational trails or bike paths generally understand the risk of injury inherent in the use of such pedestrian ways.[9] It is by no means clear that users of the ramp at issue would similarly apprehend and accept the risk the ramp could fail.

Finally, there is no indication that any public entity in this state has ever operated under the assumption that ramps such as the one at issue here were covered under the statute. Indeed, the 36 California cities that have joined in this case as amici curiae concede in their brief that the ruling below that the boat ramp is within the immunity constitutes "an extension of this ever expanding area of the law," albeit one amicus curiae believes is "not overreaching."

In sum, we conclude that the ramp as pleaded in the complaint is not a "trail" within the meaning of section 831.4. There is no reason to believe the Legislature intended to give this word such an enlarged meaning, which is contrary to the dictionary definitions and common understanding of the term, and no public policy interest would be served by such a construction.

---

[9] "A large portion of the activities comprising modern public park and recreation programs, however, might well be curtailed, deferred or even completely eliminated if the risk of tort liability were to impose unduly large obligations upon the public treasury. To forestall such adverse consequences, it would not be unreasonable to expect those persons who voluntarily participate in the public recreation program to assume a portion of the risk of injuries arising therefrom (albeit tortiously) as part of the price to be paid for benefits received.)" (5 Cal. Law Revision Com. Rep., *supra*, at p. 490.)

Consequently, the trial court erred in granting City judgment on the pleadings on that ground.

The judgment is reversed and the matter remanded for further proceedings. Appellant is awarded her costs on this appeal.

Lambden, J., and Ruvolo, J., concurred.