Filed 11/19/19 Certified for Publication 12/16/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SALLY LOEB,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>COUNTY OF SAN DIEGO,<br><br>      Defendant and Respondent. | D074347<br><br><br><br>(Super. Ct. No.<br> 37-2016-00005735-CU-PO-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Affirmed.

Gilleon Law Firm, Daniel M. Gilleon, James C. Mitchell; Law Offices of Brian R. Riley, Brian R. Riley; Niddrie Addams Fuller Singh and Rupa G. Singh for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, David L. Brodie, Chief Deputy County Counsel, and Laura E. Dolan, Deputy County Counsel, for Defendant and Respondent.

Sally Loeb sued the County of San Diego (County) for personal injuries she allegedly sustained when she tripped on an uneven concrete pathway in a County park.

The County filed successive motions for summary judgment (an initial motion, and a renewed motion based on new evidence) based on its "trail immunity" defense, which provides absolute immunity to public entities for injuries sustained on public trails that provide access to, or are used for, recreational activities. (Gov. Code, § 831.4.)[1] The trial court denied the County's motions, finding disputed facts existed regarding whether the pathway was used for recreational purposes. But when Loeb conceded during argument over the proposed special verdict forms that the pathway was used, at least in part, for recreational purposes, the trial court granted a nonsuit in the County's favor. Loeb contends the trial court erred procedurally and substantively. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Pleadings*

Loeb sued the County alleging that on July 22, 2015, she sustained personal injuries when she tripped on an uneven concrete pathway in the County-owned Guajome Regional Park (the Park). Her operative first amended complaint asserted causes of action for dangerous condition of property (§ 835) and violation of mandatory duties (§ 815.6).[2]

The County filed an answer asserting trail immunity as an affirmative defense.

---

[1]    Government Code section 831.4 provides in part: "A public entity . . . is not liable for an injury caused by a condition of: [¶] (a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, . . . water sports, recreational or scenic areas . . . . [¶] (b) Any trail used for the above purposes." Further undesignated statutory references are to the Government Code.

[2]    The trial court later granted summary judgment on Loeb's claim for violation of mandatory duty. That ruling is not at issue in this appeal.

2

The County moved for summary judgment based on, among other things, its trail immunity defense. The County submitted evidence showing the pathway is in "a county regional park designated for hiking, fishing, and camping," and "provides access to the restrooms, the adjacent camp grounds . . . , and the inner areas of the park for hiking, fishing, and other recreational activities."

Loeb opposed the County's motion, arguing triable issues of fact existed regarding whether the pathway constituted a trail for purposes of immunity. Loeb explained she was injured while using the pathway to walk to the restroom from a barbecue at her daughter's campsite. She cited evidence showing the pathway "is adjacent to a paved roadway" and serves only to connect that roadway (including a handicapped parking stall) to a handicapped-accessible restroom. She also cited County construction plans for the Park that identify the pathway as "Accessible Concrete Walks to Restroom." Loeb thus maintained "the sole purpose of the sidewalk is to provide an accessible concrete walk to th[e] restroom."

The trial court (Judge Robert Dahlquist) denied the County's motion, finding a triable issue of fact existed as to whether the pathway constituted a trail for purposes of trail immunity because "a trier of fact could conclude that the trail at issue was designed and used for a recreational purpose *or* that the trail simply provided a route for pedestrians to walk to the restrooms." (Italics added.)

*The County's Renewed Summary Judgment Motion*

About nine months after the trial court denied its first summary judgment motion, the County filed a renewed motion "on the grounds that new evidence demonstrates that the pathway at issue was a dual purpose trail subject to trail immunity." The County conceded the pathway was used to access the restrooms, but it also argued that further discovery uncovered "new evidence [that] conclusively establishes that the pathway was *also used* regularly by park visitors to engage in recreational activities." This evidence included photographs taken by a recently installed wildlife camera, which "captured numerous images of park visitors walking their dogs, running, and riding bikes on the subject pathway." A County official swore in a declaration that the pathway had been similarly used at the time of Loeb's incident. The County also cited Loeb's expert's deposition testimony acknowledging that "the pathway at issue is used by park visitors for 'riding bicycles, skateboards, strollers, [and] walking dogs.' " Finally, the County cited elements of the Park's Master Plan "show[ing] that all of the pedestrian pathways were intended to link activities within the park together rather than be used for a single purpose."

Loeb opposed the County's renewed motion. First, she disputed the County's evidence that the pathway "is sometimes used by people engaged in recreational activities." She maintained that the "handful of photographs showing park visitors using the pathways" *apparently* for recreational activities "do not indicate whether the individuals shown were in fact engaged in 'recreation' . . . or were simply on their way to

4

or from the bathroom."  Second, although she acknowledged that a pathway's "*use* may be pertinent . . . , the key issue is whether the pathway was ***designed*** for recreational use or access."  (First italics added.)  Loeb emphasized that the County's construction plans showed that the pathway "was developed for the sole purpose of providing an accessible pedestrian walkway to a restroom," and "the County can produce no evidence indicating it was <u>designed</u> for recreational access or use."  (Bolding and italics omitted, underlining added.)  In light of the claim that the pathway was initially designed for a nonrecreational purpose, Loeb argued it was legally inconsequential that the pathway later took on a dual use that included recreation.

The trial court (Judge Ronald Frazier, who presided over the remainder of the relevant proceedings) denied the County's motion as to trail immunity for two reasons: (1) it was untimely, and (2) the County "failed to provide a satisfactory explanation for the failure to produce that evidence at an earlier time (i.e., specifically referring to the wildlife camera photos and Master Plan)."  The court added that even if it were to consider the County's new evidence, the court would find a material factual dispute because the court was "still persuaded that more than one conclusion is possible relating to the trail/sidewalk"—"a trier of fact could conclude that the trail at issue was designed and used for a recreational purpose or that the trail simply provided a route for pedestrians to walk to the restrooms."

5

*The Nonsuit*

Pretrial proceedings involving the parties' competing motions in limine, jury instructions, and proposed verdict forms eventually culminated in the trial court granting a nonsuit in favor of the County.

*Motions in Limine*

Loeb moved in limine to exclude photographs taken by a wildlife camera installed in the Park after Loeb's accident. The County explained that "the photographs . . . demonstrate that people were using . . . the pathway for recreational activities, and [the County has] a witness who could testify that that is how the pathway was used . . . before the incident, at the time of, and after." The trial court ruled the photographs were admissible, finding them "highly probative" in "establishing that [the pathway] was for purposes of recreational use."

The County moved in limine to exclude expert testimony about "[w]hether the walkway [at issue] . . . is a trail" for purposes of trail immunity. The County had no objection to Loeb offering testimony about *how* people used the pathway; it only objected to testimony on the legal question of *what* the pathway is.

This prompted extensive argument about the legal criteria for determining whether a pathway constitutes a trail for purposes of trail immunity. Loeb argued immunity arose only if the County established the pathway "was *designed* and used for [a] recreational purpose." (Italics added.) Loeb reminded the court that both it and Judge Dahlquist had "already made that ruling" in the context of summary judgment. The County responded

6

that design and intent were irrelevant—its burden "is to just demonstrate this pathway was *used* for [a] recreational purpose[] and to access recreational activities."  (Italics added.)

As part of these discussions, the trial court confirmed with Loeb that the essence of her expert's testimony would be that the pathway is not a trail because it is paved. Based on that clarification, the trial court granted the motion to exclude Loeb's expert, noting that for purposes of immunity, the "case law clearly says it doesn't matter if [a pathway is] paved or not."  The court did not resolve the deeper legal issue regarding the design/use distinction.

*Jury Instructions and Special Verdict Forms*

The next day, the trial court selected and pre-instructed the jury.

Outside the jury's presence, the trial court addressed the conflicting approaches taken in the parties' proposed special verdict forms.  Loeb's proposal addressed issues from a plaintiff's perspective—progressing through the elements establishing liability, then raising the trail immunity defense.  As to the defense, Loeb proposed the following special verdict language:

> "8.  Was Sally Loeb using the property where the dangerous condition existed for the purpose of accessing fishing, hunting, camping, hiking, riding . . . , water sports, recreational or scenic areas?"[3]

---

3     Loeb proposed a similar special jury instruction:  "The County . . . claims that it is not liable for a dangerous condition on a trail.  *To succeed on this claim, [the] County . . . must prove that Sally Loeb's purpose in using the sidewalk where she fell* was to access fishing, hunting, camping, hiking, riding . . . , water sports, recreational or scenic areas."

7

The County, on the other hand, proposed in its special verdict form that the jury decide the immunity issue "right off the bat," which, if found applicable, would obviate the need to make findings regarding the elements of Loeb's claim. The critical question in the County's proposed verdict form reads as follows: "1. Was the sidewalk where Sally Loeb fell used by anyone for any recreational purpose?" If the jury answered "yes," the County's defense would be established.

Loeb objected to the County's proposed verdict form because it focused exclusively on the *use* of the pathway for recreational purposes without regard for whether those were the purposes for which the pathway was *designed*. Loeb reminded the trial court it had twice denied the County's summary judgment motions because factual disputes existed regarding the "design[] and use[]."

The County maintained that design is irrelevant because the trail immunity statute addresses only use. The County distinguished Loeb's cited authorities, reasoning they involved sidewalks next to roads, whereas the pathway here was located entirely within a regional park "designed to be used for recreational purposes." The County further argued that even if design were relevant, the design encompassed a recreational purpose because the pathway "provides access to the restrooms which are for campers and for the recreational activity [of] camping."

The trial court took a brief recess to read the applicable case law. Upon returning, the court explained that although some cases use the phrase "design and use," "really, the focus of the cases is . . . more on the use." And, further, if the trail has dual uses—that is,

8

it is used for both nonrecreational and recreational purposes—then trail immunity applies so long as evidence shows it is sometimes used for a recreational purpose.

Loeb again reminded the trial court that "this wasn't what the Court said twice in summary judgment." In response, the court noted, "Well, summary judgment is one thing. It's an issue of law." Loeb replied, "What I'm saying is we can't put this case on without being nonsuited if you make this ruling." At this point, Loeb stipulated that the pathway "was used for recreational purposes."

Based on Loeb's concession, the County asked the trial court to "grant trail immunity to the [C]ounty." The court responded that it would "have to listen to opening statement before [it] can" grant a nonsuit. (See Code Civ. Proc., § 581c, subd. (a) [the court may grant a nonsuit "[o]nly after, and not before, the plaintiff has completed his or her opening statement"].) Loeb waived her "opening statement for purposes of [the trial court] applying the nonsuit statute." The court accepted the waiver and granted a nonsuit in favor of the County.

The trial court later entered judgment in the County's favor. Loeb appeals.

DISCUSSION

I. *The Trial Court Did Not Grant an Improper Motion for Reconsideration*

Loeb contends the trial court "misused its inherent power to control proceedings" by improperly "treat[ing] the County's in limine motion and proposed verdict form as one for reconsideration of the denial of the summary judgment motions with no new evidence

9

or law . . . ."  (Code Civ. Proc., § 1008, subds. (a), (b) [motions for reconsideration must be based "upon new or different facts, circumstances, or law"].)  We disagree.

The trial court's ruling arose in the express context of the parties' extensive argument on their competing proposed verdict forms.  When Loeb asserted the County was attempting to relitigate its unsuccessful summary judgment motions, the trial court disagreed, explaining "summary judgment is one thing.  [This is] an issue of law."  The trial court clearly understood it was not ruling on a "disguised" motion for reconsideration.

As for the trial court's refinement of its legal reasoning, the court had the authority to do so.  (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 34 ["Trial courts always have discretion to revisit interim orders in service of the paramount goal of fair and accurate decisionmaking."]; *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108 ["If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief."]; *In re Marriage of Barthold* (2008) 158 Cal.App.4th 1301, 1308 ["*Le Francois* simply requires that the trial court reconsider a prior ruling based on its own realization that the ruling was erroneous, and not based upon a determination that [an improper] motion to reconsider should itself be granted on its merits."].)  After the court heard extensive legal argument regarding the design/use distinction for purposes of establishing immunity, the court took a brief recess to review the relevant authorities.  The court then heard additional extensive argument

10

before ultimately ruling.  This was a valid—indeed, conscientious—use of the court's discretionary authority.

Finally, although we disagree with the County's characterization of the issue as "invited error," the nonsuit resulted not from the trial court's ruling on the proposed verdict forms, but from the fact Loeb finally stipulated that the pathway was used for recreational purposes.  Although Loeb now claims "[s]he had always conceded persons had used the sidewalk for recreational purposes," the record belies this claim.  For example, in opposing the County's renewed summary judgment motion, Loeb argued that the County's assertion that the pathway "is sometimes used by people engaged in recreational activities" is a "conclusion[] not supported by the subject evidence, and *which [Loeb] disputes . . . .*"  (Italics added.)

## II.  *The County is Entitled to Trail Immunity*

Loeb contends the trial court erred by concluding, based only on the concession that the pathway was partially used for recreational purposes, that the County is entitled to trail immunity.  We disagree.

### A.  *Relevant Legal Principles*

"A public entity is generally liable for an injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury and the public entity had actual or constructive notice of the dangerous condition."  (*Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 929 (*Montenegro*).)

11

However, section 831.4—"the 'trail immunity' statute" (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211 (*Lee*))—provides that a public entity "is not liable for an injury caused by a condition of" the following: "(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding . . . , water sports, recreational or scenic areas . . ."; or "(b) Any trail used for the above purposes." (§ 831.4, subds. (a), (b).) "[S]ubdivisions (a) and (b) [of section 831.4] should be read together such that immunity attaches to trails providing access to recreational activities as well as to trails on which those recreational activities take place." (*Lee*, at p. 211; *Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1059 (*Burgueno*).)

Trail immunity applies to all manner of defects in the trail's condition. (*Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1084 (*Amberger-Warren*) [" 'It is well-established that the immunity covers negligent maintenance of a trail[.]' "]; *Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 227 (*Treweek*) [" 'It is . . . clear that the state is absolutely immune from liability for injuries caused by a physical defect of a trail.' "].)

" 'The plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use, because "the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use." ' " (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1059.)

12

"Whether a property is considered a 'trail' under section 831.4 turns on 'a number of considerations,' including (1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute." (*Lee*, *supra*, 38 Cal.App.5th at p. 211, quoting *Amberger-Warren*, *supra*, 143 Cal.App.4th at pp. 1078-1079, 1077 [extending trail immunity to "a paved pathway in an urban park setting"].)  Although this " 'is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible.' " (*Montenegro*, *supra*, 215 Cal.App.4th at p. 929.)

## B.  *Analysis*

Considering the relevant factors in light of Loeb's stipulation that the pathway was used, in part, for recreational purposes, we conclude as a matter of law that the pathway constitutes a trail for purposes of trail immunity.

### 1.  *Accepted Definitions*

"[T]he pathway constitutes a trail under accepted definitions because it is a paved pathway through a park, and a 'path' . . . is synonymous with a 'trail.' " (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1079; *id.* at p. 1078 ["immunity applies whether or not the trail is paved"]; *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1103 ["[T]he appellate courts have so far unanimously interpreted the current wording of section 831.4, subdivision (b) to apply full immunity to any trail, *paved or unpaved*."], italics added; *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 418 (*Armenio*) ["the nature of the trail's surface is irrelevant to questions of immunity"].)

13

In this respect, Loeb's reliance on *Treweek*, *supra*, 85 Cal.App.4th 221, which found a triable issue regarding whether a "boat ramp" was entitled to trail immunity, is distinguishable. As that court noted, " '[p]ath' is a synonym for 'trail' [citations], but 'ramp' is not." (*Id.* at pp. 231-232; see also *id.* at p. 230 ["Dictionary and judicial definitions of 'trail' and 'ramp' do not suggest the words are synonyms or that trails and ramps are designed or ordinarily used for the same purpose."].)

## 2. *Design and Use*

The critical dispute in this case revolves around the second immunity factor. Loeb contends the factor requires consideration of the purpose for which the pathway was "designed and used," while the County maintains it requires consideration only of how it was used. We agree with the County, but would conclude the pathway is a trail even if we were to also consider the purpose for which it was designed.

Beginning with the language of section 831.4, we observe that the word "design" appears nowhere in it, while "used for" does. (§ 831.4, subds. (a)-(c); see *Hartt v. County of Los Angeles* (2011) 197 Cal.App.4th 1391, 1398-1399 (*Hartt*) [it is a "time-honored principle of statutory interpretation that the appellate court will not look beyond the wording of a statute if it is clear on its face"].) This supports the County's interpretation.

Turning to the cases Loeb cites to support the proposition that the "vital element" in the analysis is "the purpose for which the pathway was created by the government entity that designed and installed it" (bolding and italics omitted), we conclude the cases do not assist her because the design/use distinction was not at issue in any of them. (See

14

*Montenegro*, *supra*, 215 Cal.App.4th at p. 930 [it was "uncontroverted . . . that the pathway was designated by the city as a park and recreational trail when it approved construction"]; *Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1083 [finding as a matter of law that a paved pathway in a dog park was a "trail" rather than a "sidewalk" because "no triable issue arises as to a property's status . . . simply by virtue of what people may call it"]; *Armenio*, *supra*, 28 Cal.App.4th 413, 418 [it was undisputed that the trail was "intended to be used for hiking and riding, two of the enumerated activities of section 831.4, subdivision (a)"]; *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 608-610 [addressing issues regarding paved surface and access to recreation].) "It is axiomatic that cases are not authority for propositions that are not considered." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043.)

Unlike the cases Loeb cites, the design/use distinction was critical to the court's analysis in *Burgueno*, *supra*, 243 Cal.App.4th 1052. In *Burgueno*, a public university asserted trail immunity as a defense to a lawsuit brought by the mother and sister of a student who died in a bicycle accident while commuting home on an on-campus bicycle path. (*Id.* at pp. 1054-1055.) The undisputed evidence established that the bike path was *designed* for the *nonrecreational* "purpose of . . . bicycle transportation to and from the central campus that is separate from automobile traffic." (*Id.* at p. 1055.) But the undisputed evidence also showed that "[s]ome bicyclists *use* the [path] for *recreation*."

15

(*Ibid.*, italics added.) The trial court granted summary judgment in favor of the university on its trail immunity defense, and the Court of Appeal affirmed. (*Id.* at pp. 1056, 1062.)

As relevant to the design/use distinction, the *Burgueno* plaintiffs argued on appeal that trail immunity did not apply because "the bikeway was designed for [the] primary use of bicycle commuting," and the fact that some riders used it for a "secondary" recreational purpose "does not change the primary [nonrecreational] character." (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1059.) The plaintiffs also "emphasize[d] that [the student] was not engaged in a recreational activity when his accident occurred" on the path. (*Ibid.*) The Court of Appeal was "not persuaded that the use of a trail for both recreational and non-recreational purposes precludes trail immunity . . . ." (*Id.* at p. 1060.)

To the contrary, the court noted the many cases holding that mixed use trails are entitled to immunity. (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1061, citing *Montenegro*, *supra*, 215 Cal.App.4th at p. 932 ["The fact that a trail has a dual use—recreational and nonrecreational—does not undermine [trail] immunity."]; *Hartt*, *supra*, 197 Cal.App.4th 1391.) For example, in *Montenegro*, the appellate court affirmed a summary judgment entered in favor of a city arising from a plaintiff's trip-and-fall while walking on a pathway "as an ordinary pedestrian," not for a recreational purpose. (*Montenegro*, at p. 932.)[4]

---

[4]    This renders irrelevant Loeb's observation in her briefing that it "was undisputed [she] was not using the [pathway] for [recreational] purposes" when she was injured.

Similarly, in *Hartt*, the appellate court affirmed a summary judgment based on trail immunity where a bicyclist died when he collided with a county-owned service vehicle on a park trail used for both recreation and service access. (*Hartt*, *supra*, 197 Cal.App.4th at pp. 1399-1400.) Addressing dual use, the *Hartt* court observed there was "no such exception on the face of the statute," and the "Legislature knows how to create statutory exceptions but apparently chose not to do so in this instance." (*Id.* at p. 1400.)

Applying these principles, the *Burgueno* court concluded that "[s]ince the [bike path] has mixed uses that undisputedly include recreation, the [university] [has] trail immunity . . . from claims . . . that arise from the condition of the [path]." (*Burgueno*, *supra*, 243 Cal.App.4th at p. 1061.)

The same holds true here. While Loeb asserts the pathway was *designed* for the sole purpose of providing bathroom access, she stipulated that it was also *used* for recreational purposes. Thus, under *Burgueno* (and the cases cited therein), the County is entitled to immunity.

Loeb argues that extending immunity to this pathway based on her stipulation that it was used for recreational purposes "would 'mean that every sidewalk in a public park is a trail.' " She bases this on a passage in *Amberger-Warren*, *supra*, 143 Cal.App.4th at page 1083, which involved a paved pathway in an urban dog park. That court rejected the concern, stating "no such broad pronouncement is implicit in our reasoning." (*Ibid.*) Rather, the court explained, immunity "will depend . . . on accepted definitions of the

17

property, the purpose for which the property is used,[5] and the purpose of the statute." (*Ibid.*) Thus, not every sidewalk in every park will be immune—just those pathways that are used for recreational purposes, as Loeb stipulated occurred here.

We are similarly unpersuaded by Loeb's argument that the pathway is a "sidewalk" (rather than a trail) because it "runs directly alongside a road." In concluding the paved path in a dog park constituted a trail, the *Amberger-Warren* court observed that "[p]aved paths in public parks have . . . been distinguished from sidewalks if they were not located on or adjacent to a *street* or *highway*." (*Amberger-Warren*, *supra*, 143 Cal.App.4th at p. 1081, italics added.) The diagrams and photographs of the Park that Loeb included in the record clearly show the pathway is not adjacent to a *street* or *highway*. Instead, it is fully contained within a Park and abuts a "loop road" that connects campsites.

Even were we to accept Loeb's position that the purpose for which a pathway is designed determines whether it is a trail to which immunity attaches, we would still conclude as a matter of law that the County is entitled to immunity. Section 831.4 provides immunity for trails that "provide[] access to" or are "used for" certain enumerated recreational activities, including "camping." (§ 831.4, subds. (a), (b).) Loeb's contention that the pathway "could not be used for the purpose[] of . . . camping"—presumably because one cannot pitch a tent on a concrete pathway—is based on an unjustifiably narrow reading of the immunity statute. We agree with the County's

---

5    Significantly, in this formulation of the immunity factors, the court articulated the second factor as "the purpose for which the property *is used*," not "designed and used." (*Amberger-Warren*, *supra*, 143 Cal.App.4th at pp. 1079, 1083, italics added.)

18

observation that using a bathroom is "part of the recreational activity of camping." Indeed, Loeb admits in her briefing that "[t]he evidence here establishes . . . the sidewalk leads to a restroom facility *that exists for the use of people using the 33 campsites at the nearby campground area*."  (Italics added.)  Because, as Loeb acknowledges, the pathway was designed to provide campers access to bathrooms, which is an integral part of camping, the pathway was designed for use in the statutorily recognized recreational activity of camping.

### 3.  *Purpose of the Immunity Statute*

The pathway should be treated as a trail for purposes of immunity because the " 'whole point of . . . section 831.4 is to encourage public entities to keep recreational areas open, sparing the expense of putting undeveloped areas in a safe condition, and preventing the specter of endless litigation over claimed injuries.' "  (*Hartt*, *supra*, 197 Cal.App.4th at p. 1399; see *Lee*, *supra*, 38 Cal.App.5th at p. 214 ["the statute's paramount purpose is keeping recreational areas open to the public by preventing burdens and costs on public entities."].)  " 'The only way to further that purpose is for courts to refrain from second-guessing the merits of the Legislature's decision on immunity.' "  (*Hartt*, at p. 1399.)  "We recognize trail immunity comes at a cost to those denied recovery for their injuries on public land.  But so did the Legislature, and we must defer to its calculus."  (*Arvizu v. City of Pasadena* (2018) 21 Cal.App.5th 760, 763.)

Loeb maintains the County is not entitled to immunity because she paid a $3 fee to enter the Park.  She bases this argument, in part, on Civil Code section 846, which denies

a property owner immunity from injuries sustained on its property "where permission to enter for [recreational purposes] was granted for a consideration . . . ." (Civ. Code, § 846, subd. (d)(2).) But the County did not seek *recreational* immunity under Civil Code section 846; it sought *trail* immunity under section 831.4. Indeed, Civil Code "[s]ection 846 *does not apply to public entities*." (*Pacific Gas & Electric Co. v. Superior Court* (2017) 10 Cal.App.5th 563, 568, fn. 3, italics added; see *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 704.)

Loeb also argues that because the Park "attracts paying users, the purpose of section 831.4 no longer applies," as it "is unlikely the threat of litigation will cause the responsible government entity to close the property." A similar argument was recently rejected in *Lee*, where the plaintiff asserted that the "revenue-generation" afforded by her payment of a $25 fee to camp in a state park where she was injured "would show that granting immunity . . . does not serve the statute's purpose." (*Lee*, *supra*, 38 Cal.App.5th at pp. 213.) The *Lee* court found the plaintiff's proposed "revenue-burden test" unwarranted, "find[ing] no reason in either the language of the statute or in the case law to preclude immunity because [the state park] purportedly charges a nominal fee." (*Id.* at pp. 213-214.)

The *Lee* plaintiff argued (as Loeb does here) that her position was supported by cases that denied immunity when injuries were caused by revenue-generating enterprises associated with public facilities. (*Lee*, *supra*, 38 Cal.App.5th at p. 214; see *Treweek*, *supra*, 85 Cal.App.4th at p. 234 [boat ramp used for both recreational and commercial

20

purposes]; *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532, 544 [commercially operated, revenue-generating public golf course adjacent to trail].) The *Lee* court found those cases distinguishable because they involved commercial enterprises, whereas "[the state park system] is simply not a commercial enterprise, even if it charges fees . . . ." (*Lee*, at p. 214.)

Similarly, the Park is not a commercial enterprise simply because it charges a nominal entry fee. Thus, providing the County with immunity for an injury sustained within the Park is consistent with the purposes of the immunity statute.

## DISPOSITION

The judgment is affirmed. The County is entitled to its costs on appeal.


HALLER, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

21

Filed 12/16/19

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SALLY LOEB, | D074347 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00005735-CU-PO-NC) |
| COUNTY OF SAN DIEGO, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed November 19, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request(s) pursuant to rule 8.1120(a) for publication is/are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P. J.

Copies to:  All parties

2