Filed 2/23/24  Haering v. County of San Bernardino CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KELLY HAERING, | D082202 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1934186) |
| COUNTY OF SAN BERNARDINO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Dordick Law Corporation, Gary A. Dordick, John M. Upton; The Arkin Law Firm, Sharon J. Arkin; Belgum, Fry & Van Allen, Alan A. Carrico, and Garret R. Fry for Plaintiff and Appellant.

Silver & Wright, Mahadhi Corzano; Fujii Law Group and John M. Fujii for Defendants and Respondents.

Kelly Haering fell when she stepped in a depression in the pavement while on a walkway through the Moonridge Animal Park in the San Bernardino Mountains.  Haering brought suit to recover for injuries she

sustained from the fall, asserting the property owners had negligently failed to maintain the walkway and that it was in a dangerous condition at the time of her fall.  Haering sued the County of San Bernardino and the Big Bear Valley Recreation and Park District, a Special District of the County of San Bernardino, (collectively, County), which leased the property from a family trust managed by Sandra and David Nolan, also named as defendants.[1]

The County brought a successful motion for summary judgment asserting that Haering's claims against it were barred by governmental immunity under Government Code section 831.4, subdivision (b).[2]  The statute creates immunity for public entities from liability for injuries caused by the condition of any trail used for recreational purposes.  On appeal from the judgment entered in favor of the County, Haering asks us to reject settled case law and conclude the statute does not apply to *paved* trails like the one at issue here.  In addition, Haering argues that triable issues of fact remain as to whether or not the walkway she fell on is a "trail" used for recreational purposes as required for immunity under section 831.4.

As we shall explain, we decline Haering's invitation to rewrite settled law holding that recreational trail immunity applies to paved trails like the one here.  Further, we agree with the trial court that no triable issues of fact remain as to whether the walkway is a trail or whether it is used for recreational purposes.  Thus, Haering's arguments do not support reversal of

[1]    The trial court granted summary adjudication of just one of Haering's three claims against the Nolans, and the litigation remained ongoing against them at the time of appeal.

[2]    Subsequent undesignated statutory references are to the Government Code.

the trial court's order finding the County immune from liability and granting summary judgment in its favor.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Big Bear Valley Recreation and Park District was formed by the San Bernardino County's Board of Supervisors by resolution on April 23, 1934.  After a wildfire in 1959 devastated the San Bernardino Mountain eco-system and its wildlife, the Big Bear Valley Recreation and Park District entered into a 50-year lease to establish the Moonridge Animal Park (Animal Park).

The Animal Park's Lead Zookeeper, Summer McElroy, stated in her declaration in support of the County's motion for summary judgment that the park was created as a shelter for injured or orphaned animals to allow them "to heal in as close to a native environment as reasonably possible."  Further, "the Animal Park was designed ... to be a mountain park for the general public to observe the animals amongst the native fauna and flora of the San Bernardino Mountains."  "[T]he animals are inside fenced areas" that are designed "to duplicate their native environment, such as being surrounded by native woodland trees and bushes, rocks, and woodland debris including logs to retain the impression of a woodland environment for both the animals and the general public.  The entire Animal Park is landscaped in native mountain flora including trees and bushes native to the Big Bear Lake area."

Inside the Animal Park are "a series of asphalt covered access and recreational trails leading away from the entry building into and amongst the animals for use of the public."  No motor vehicles, except those used by the park's staff, are permitted inside the Animal Park.  In her declaration, McElroy stated the trails inside the park have been covered by asphalt for "at least a couple decades" and are seasonally covered with snow and rain.

3

"[T]he asphalt coating on the trails allows the Animal Park to keep the trails reasonably safe for use by the general public and staff during the different seasons of the year by allowing water and melting snow and ice to run off the trails and not create puddles or mud on the trails."

In the fall of 2019, Haering fell on one of the paved walkways in the Animal Park. She and her husband were visiting the park to observe the animals. In her deposition, Haering described the area of her fall as the main walkway into the Animal Park, just past the entry building where a $12 entrance fee is collected. The walkway is about 15 feet wide, and Haering fell in the middle of that path. When she fell, Haering stepped into a hole in the asphalt, rolled her ankle and landed on her knee. Haering felt nauseous and could not get up for a few minutes. Once she stood, an employee of the Animal Park helped Haering to the restroom. The employee also placed a safety cone over the hole in the asphalt. McElroy arrived shortly after and provided Haering with an accident report form, which Haering completed.

Several months after her fall, Haering filed a complaint in the Superior Court of San Bernardino County initiating this lawsuit. After amendments to the pleadings and discovery, the County filed its motion for summary judgment, asserting Haering's claims were barred by the recreational trail immunity statute, section 831.4. In her opposition to the motion, Haering asserted the walkway was not a trail for purposes of the statute and "visiting a zoo" was not a recreational activity under the statute. She also argued there were triable issues of material fact as to whether the statute applied. After the completion of briefing and supporting evidentiary submissions, the parties argued the motion at a hearing.

After taking the matter under submission, the court issued its order finding the recreational trail immunity statute precluded Haering's claims

4

against the County.  The court later entered judgment in favor of the County and the Big Bear Valley Recreation and Parks District.  Haering timely appealed.

## DISCUSSION

### I

*Legal Standards*

#### A

*Standard of Review*

"The standard of review for an order granting a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)  The trial court's stated reasons for granting summary judgment are not binding on the reviewing court, 'which reviews the trial courts' ruling, not its rationale.' " (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057 (*Burgueno*).)  "In performing our independent review, we apply the same three-step process as the trial court.  'Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought.' " (*Ibid.*)

" 'We then examine the moving party's motion, including the evidence offered in support of the motion.' [Citation.]  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o); *Aguilar, supra*, 25 Cal.4th at p. 850.)" (*Burgueno, supra*, 243 Cal.App.4th at p. 1057.)  "[I]f the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a

5

triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.)"  (*Burgueno*, at p. 1057.)

"In determining whether the parties have met their respective burdens, 'the court must "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citation], in the light most favorable to the opposing party.'  (*Aguilar, supra*, 25 Cal.4th at p. 843.)  'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'  (*Id.* at p. 850, fn. omitted.)  Thus, a party ' "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." ' "  (*Burgueno, supra*, 243 Cal.App.4th at p. 1057.)

Thus, we independently determine whether the County's "motion for summary judgment should have been granted on the ground that the undisputed facts show that the action is barred as a matter of law under the government immunity provided by section 831.4."  (*Burgueno, supra*, 243 Cal.App.4th at p. 1058.)

B

*Recreational Trail Immunity*

" 'A public entity is generally liable for an injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury and the public entity had actual or constructive notice of the dangerous condition.' "  (*Loeb v. County of San Diego* (2019) 43 Cal.App.5th 421, 431 (*Loeb*).)  However, the recreational trail immunity statute, section 831.4, provides that a public entity "is not liable for

6

an injury caused by a condition of" the following: "(a) Any unpaved road which provides access to fishing, hunting, camping, hiking, riding, including animal and all types of vehicular riding, water sports, recreational or scenic areas;" or "(b) Any trail used for the above purposes." (§ 831.4, subds. (a), (b).) "[S]ubdivisions (a) and (b) should be read together such that immunity attaches to trails providing access to recreational activities as well as to trails on which those recreational activities take place."[3] (*Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, 211 (*Lee*).)

" ' "The plainly stated purpose of immunity for recreational activities on public land is to encourage public entities to open their property for public recreational use, because 'the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " ' " (*Loeb, supra*, 43 Cal.App.5th at p. 431.) "Trail immunity applies to all manner of defects in the trail's condition." (*Ibid.*; see also *Amberger-Warren v. City of Piedmont* (2006) 143 Cal.App.4th 1074, 1084 (*Amberger-Warren*) ["It is well-established that the immunity covers negligent maintenance of a

[3]   The final provision of the statute, subdivision (c), which does not apply in this case, states that a public entity is not liable for an injury caused by "Any paved trail, walkway, path, or sidewalk on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property, so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of any condition of the paved trail, walkway, path, or sidewalk which constitutes a hazard to health or safety. Warnings required by this subdivision shall only be required where pathways are paved, and such requirement shall not be construed to be a standard of care for any unpaved pathways or roads." (§ 831.4, subd. (c).) This provision creates "qualified immunity for injuries caused by a condition of a paved trail or path 'on an easement of way which has been granted to a public entity, which easement provides access to any unimproved property ....' " (*Prokop v. City of Los Angeles* (2007) 150 Cal.App.4th 1332, 1342 (*Prokop*).)

trail"]; *Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 227 (*Treweek*) [" 'It is ... clear that the state is absolutely immune from liability for injuries caused by a physical defect of a trail.' "].)

" 'Whether a property is considered a "trail" under section 831.4 turns on "a number of considerations," including (1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute.' (*Lee, supra*, 38 Cal.App.5th at p. 211, quoting *Amberger-Warren, supra*, 143 Cal.App.4th at pp. 1077–1079 [extending trail immunity to 'a paved pathway in an urban park setting'].) Although this ' "is ordinarily viewed as an issue of fact [citation], it becomes one of law if only one conclusion is possible." ' " (*Loeb, supra*, 43 Cal.App.5th at pp. 431–432.)

Courts have held repeatedly that "the 'nature of the trail's surface is irrelevant to questions of immunity' " and "that section 831.4 applies to paths, regardless of whether they are paved or unpaved." (*Lee, supra*, 38 Cal.App.5th at pp. 211–212, citing *Armenio v. County of San Mateo* (1994) 28 Cal.App.4th 413, 418 (*Armenio*) [rejecting assertion that section 831.4, subdivision (b) was not applicable to a paved bike path]; see *Carroll v. County of Los Angeles* (1997) 60 Cal.App.4th 606, 609 (*Carroll*) [holding "[t]he words 'trail' and 'path' are synonymous" and that a paved bicycle path was a trail for purposes of section 831.4, subdivision (b)]; *Farnham v. City of Los Angeles* (1998) 68 Cal.App.4th 1097, 1102 (*Farnham*) ["appellate courts have so far unanimously interpreted the current wording of section 831.4, subdivision (b) to apply full immunity to any trail, paved or unpaved"]; *Amberger-Warren, supra*, 143 Cal.App.4th at p. 1078 ["The immunity applies whether or not the trail is paved."]; *Prokop, supra*, 150 Cal.App.4th at p. 1342 ["the courts of appeal have been unanimous in holding ... that the nature of a trail's surface

is irrelevant to questions of immunity"]; *Loeb, supra*, 43 Cal.App.5th at p. 432 [same].)

## II

### *Analysis*

### A

*Recreational Trail Immunity Applies to the Animal Park's Walkway*[4]

As just noted, a long line of California Court of Appeal decisions, including a relatively recent decision of this court, *Loeb*, have concluded that the immunity created by section 831.4, subdivision (b) equally applies to paved and unpaved pathways and trails. Despite this law, Haering asserts these cases wrongly interpreted the statute and should be rejected because the legislative history of the statute, along with that of section 831.2, show the law was not intended to provide immunity for the paved walkway on which she fell.

As the County argues, the plain language of section 831.4, subdivision (b) refers to "any trail," and, unlike subdivisions (a) and (c) of the statute, contains no limitation to "unpaved road" or "unpaved trail." As Haering acknowledges, courts have repeatedly held "the nature of the trail's surface is irrelevant to questions of immunity" under section 831.4, subdivision (b). (*Armenio, supra*, 28 Cal.App.4th at p. 418.) In the first of these cases, *Armenio*, the court rejected the same argument Haering advances here, that the statute "does not extend to paved trails." (*Armenio,* at p. 418.) In *Armenio*, the plaintiff was injured on a paved bicycle path. On

---

[4] The County argues that we should reject Haering's appeal because her summary of the facts contains only a one-sided presentation of the relevant evidence. As Haering points out, however, the County does not identify any missing material information in Haering's briefing. We decline to affirm the judgment on this ground.

9

appeal from summary judgment, the bicyclist argued that "if immunity applied to both paved and unpaved trails, there would be no need for section 831.4, subdivision (c), which specifically refers to paved trails, paths, etc." (*Ibid*.)

The First District rejected this assertion, explaining that "subdivision (c) is not concerned with property that public entities own in fee, but with easements granted to public entities specifically to provide access to unimproved property." (*Armenio, supra*, 28 Cal.App.4th at p. 418.) The court held that "[u]nlike subdivision (a) of section 831.4, which refers specifically to 'unpaved' roads, and subdivision (c), which refers specifically to 'paved' trails, paths, etc., subdivision (b) refers to '[a]ny' trail. The logical inference of the all-encompassing 'any' in subdivision (b), particularly in relationship to the limiting adjectives in its sister subdivisions, is that the nature of the trail's surface is irrelevant to questions of immunity." (*Armenio,* at p. 418.)

Several years later, in *Farnham*, the Second District reached the same conclusion as *Armenio*. The *Farnham* court considered statutory construction arguments similar to those advanced by Haering. (*Farnham, supra*, 68 Cal.App.4th at p. 1099.) In *Farnham*, a bicyclist was injured when he was riding on a paved bike path. On appeal from a judgment on the pleadings, the bicyclist argued, among other things, that the path was not subject to recreational trail immunity under section 831.4, subdivision (b) because it was paved. (*Ibid*.) Looking to the legislative history of the statute, the court rejected this argument. *Farnham* explained, "[a]s originally enacted, subdivision (b)'s application was limited to '[a]ny hiking, riding, fishing or hunting trail.' (Stats. 1963, ch. 1681, § 1, p. 3273.) [¶] The introductory paragraph to section 831.4 was subsequently amended to include 'a grantor of a public easement' as being entitled to immunity under the statute. (Stats.

10

1970, ch. 807, § 2, p. 1530.) The stated purpose was to encourage people to grant public easements by giving liability immunity." (*Farnham, supra*, 68 Cal.App.4th at pp. 1101–1102.) At the same time, "subdivision (b) was amended from '[a]ny hiking, riding, fishing or hunting trail' to '[a]ny trail used for the above [subdivision (a)] purposes.' (Stats. 1970, ch. 807, § 2, p. 1530.)" (*Farnham*, at p. 1101.) Then, "in 1979, section 831.4, subdivision (c) was added in order to encourage governmental entities to accept easements for trails, etc., without fear of tort liability." (*Id*. at p. 1102.)

Farnham explained that while "[i]t is true that part of the legislative history ... shows a concern with total immunity over only unpaved roads or trails, and a more qualified immunity (as now expressed in section 831.4, subdivision (c)) for paved trails," the provision "went through a variety of drafts as to subdivisions (b) and (c) before its final form. After considerable input from attorneys, cities, and counties, the final draft gave total immunity for *any* trail used for recreational access, and a more limited immunity to paved trails, etc., on an easement that provides access to unimproved property." (*Farnham*, 68 Cal.App.4th at p. 1102.) As *Farnham* stated, at the time it added subdivision (c) to the statute, "[t]he Legislature could have easily chosen to make subdivision (b)'s 'any trail' subject to the same" conditions as subdivision (c) "and opted not to do so."[5] (*Ibid*.) We agree with this settled law that the immunity afforded by section 831.4, subdivision (b)

---

[5]     *Farnham* also noted that the California Supreme Court had recently denied review of the same issue in *Carroll* (a slightly earlier case that also followed *Armenio*), and that it was "up [to] the Legislature to determine if there are public policy considerations that might justify something less than full immunity, and, if so, whether section 831.4 should be amended." (*Farnham, supra*, 68 Cal.App.4th at p. 1103.)

applies to both unpaved and paved trails, including the walkway through the Animal Park at issue here.

To support her argument that these cases were wrongly decided, Haering looks to the legislative comments of section 831.2, which was enacted at the same time as the original version of section 831.4, and the California Supreme Court's decision in *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829 (*Milligan*). This authority does not persuade us that subdivision (b) of section 831.4 has been incorrectly interpreted. Haering argues that because the original language of section 831.4 only concerned unpaved and unimproved roads and trails, the "Legislature did not and could not *intend* to include such paved, multiuse trails in its definition of 'trails' under" the statute, nor "did it ever impliedly or explicitly do so in any subsequent amendment to that section."

At the time sections 831.2 and 831.4 were enacted as part of the Tort Claims Act of 1963 (§§ 810–996.6) establishing certain governmental immunity, the Legislature adopted formal legislative committee comments to section 831.2 that reference section 831.4. Section 831.2, which has remained unchanged since its enactment, states: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." The formal comments to the provision state: "This section provides an absolute immunity from liability for injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding,

12

fishing and hunting trails.  [¶] This section and Section 831.4 continue and extend an existing policy adopted by the Legislature in former Government Code Section 54002.  It is desirable to permit the members of the public to use public property in its natural condition and to provide trails for hikers and riders and roads for campers into the primitive regions of the State.  But the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.  In view of the limited funds available for the acquisition and improvement of property for recreational purposes, it is not unreasonable to expect persons who voluntarily use unimproved public property in its natural condition to assume the risk of injuries arising therefrom as a part of the price to be paid for benefits received." (§ 831.2, Leg. Comm. Comments.)  The legislative comments to section 831.4, in turn, refer to the section 831.2 comments, and state that section 831.4 "will provide, for example, an absolute immunity from liability for injuries resulting from the condition of such roads as fire protection roads in timbered areas and irrigation district maintenance roads." (§ 831.4, Leg. Comm. Comments.)

Based on this language, Haering contends that the Legislature intended only to provide immunity to unpaved trails providing access to recreational activities.  The comments, however, do not limit the governmental immunity created by these statutes.  Rather, they provide an explanation for the continuation and expansion of existing immunity created by these provisions.  That immunity was extended to encourage public entities to provide access to areas that would otherwise be made inaccessible because of liability concerns.  (See *Milligan, supra,* 34 Cal.3d at p. 833 ["The legislative policy underlying the immunity is clear.  It is desirable to permit

13

public use of governmental property but governmental agencies might prohibit such use if they were put to the expense of making the property safe, responding to tort actions, and paying damages."].)  This policy does not conflict with the plain language of the current statute as interpreted by *Armenio* and later cases.  (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature"].)

*Milligan* also provides no help to Haering.  The case considered whether the immunity created by section 831.2, not 831.4, was applicable to nonusers of the government property at issue, specifically the owners of an adjacent home that was damaged by trees fallen in a storm.  (*Milligan, supra*, 34 Cal.3d at p. 831.)  In deciding that the immunity did not apply in this circumstance, the Supreme Court examined the legislative history of section 831.2 to support its conclusion that the statute was not enacted to protect the government from this type of liability.  The court held that the statute's legislative comments—formerly adopted by the Senate Committee on the Judiciary and the Assembly Committee on Ways and Means to explain "the purpose and effect of the provisions to be enacted" by the Tort Claims Act—made plain that the statute "has nothing to do with an injury sustained by an adjacent landowner from a tree on government land." (*Milligan,* at pp. 831, 833.)  *Milligan*'s holding, interpreting section 831.2 and applying it to a set of facts entirely unrelated to this case, does not lead us to reject the statutory interpretation of section 831.4 discussed above.

Haering also argues that a later-adopted statute within the Tort Claims Act—section 831.7—supports her reading of section 831.4.  The County responds that Haering forfeited this argument by failing to raise it in

the trial court.  We agree with the County that the argument was forfeited. (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 ["Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider."] (*JRS Products*).) However, even if we reach this purely legal argument of statutory interpretation, we are not persuaded by it.

Section 831.7 provides immunity to public entities for certain enumerated hazardous activities.  Haering argues that her position is supported by a subdivision of section 831.7 that exempts from immunity liability for injury that is "caused by the negligent failure of the public entity or public employee to properly construct or maintain in good repair any structure, recreational equipment or machinery, or substantial work of improvement utilized in the hazardous recreational activity out of which the damage or injury arose."  (§ 831.7, subd. (c)(1)(C).)  She also asserts that subdivision (b)(3) of section 831.7, enumerating certain hazardous activities subject to the statute, shows that the Legislature intended section 831.4, subdivision (b) to apply only to unpaved trails.  She argues that because section 831.7, subdivision (b)(3) excludes "riding a bicycle on paved pathways, roadways, or sidewalks" from the definition of "mountain biking," paved trails are also exempt from liability under section 831.4, subdivision (b). These arguments lack merit.

We agree with the County that section 831.7, which was enacted in 1983 to provide governmental immunity for *hazardous* recreational activities, has no bearing on the meaning of the phrase "all trails" in section 831.4, subdivision (b).  The limitations on immunity in section 831.7 that Haering cites are sensible.  As the County points out, no one would argue that riding a

15

mountain bike on a paved trail or road is a hazardous recreational activity subject to section 831.7's immunity, but no similar rationale applies to the trail immunity at issue in this case. (See, e.g., *Loeb, supra*, 43 Cal.App.5th at p. 431 [" ' "It is well-established that the [trail] immunity covers negligent maintenance of a trail" ' "].) Likewise, the maintenance of a "substantial work of improvement" for a *hazardous* recreational activity discussed in section 831.7, subdivision (c)(1)(C), bears no relationship to the recreational trail immunity created by section 831.4. Haering's reliance on section 831.7 to support her interpretation of section 831.4 is misplaced.

B

*There Are No Disputed Issues of Material Fact*

Haering next argues that even if the recreational trail immunity statute applies to the Animal Park's paved walkway, disputed issues of material fact remain that precluded the trial court from entering summary judgment. Specifically, Haering asserts that a jury should have been given the opportunity to determine if the walkway is a trail under section 831.4 and whether the walkway was designed and used for a recreational purpose. The County responds that no factual dispute exists as to whether the walkway is a trail under the statute. We agree with the County.

As noted, courts primarily consider three factors to determine whether a property owned or controlled by a public entity is covered by the recreational trail immunity found in section 831.4, subdivision (b): " '(1) the accepted definitions of the property, (2) the purpose for which the property is designed and used, and (3) the purpose of the immunity statute.' " (*Loeb, supra*, 43 Cal.App.5th at p. 431.) Here, the undisputed facts concerning the paved walkway in the Animal Park satisfy each factor.

16

First, the accepted definition of the walkway is squarely within that of a trail. "[T]he pathway constitutes a trail under accepted definitions because it is a paved pathway through a park, and a 'path,' as *Carroll, supra*, 60 Cal.App.4th at p. 609, observed, is synonymous with a 'trail.' (See *ibid.* [dictionary definition of a trail is ' "a marked or established path or route"....']; *Treweek, supra*, 85 Cal.App.4th at p. 230 [a trail 'consist[s] primarily of a *path* or track']; compare *Treweek, supra*, at p. 230 [dictionary and judicial definitions did not suggest that a [boat] 'ramp' was synonymous with a 'trail'].)" (*Amberger-Warren, supra*, 143 Cal.App.4th at p. 1079; see also *Montenegro v. City of Bradbury* (2013) 215 Cal.App.4th 924, 931 (*Montenegro*) ["[S]ection 831.4 applies to any trail or path specifically put aside and developed for recreational uses, without regard to its unnatural condition or urban location, and have consistently defined paved, multipurpose paths located in metropolitan areas as 'recreational trails' for purposes of section 831.4, subdivision (b) immunity."].)

Haering herself repeatedly describes the area as a walkway in the Animal Park, but argues a walkway and a path are not the same. We discern no meaningful difference between a path and walkway, and agree with the County there is no factual dispute that the area at issue here is a trail for recreational purposes.[6] The undisputed evidence, in the form of McElroy's declaration, shows that the walkway is part of "a series of asphalt covered access and recreational trails ... amongst the animals for use of the public."

---

[6]     Haering also states that "absent a showing that the asphalt walkway in this case was a 'trail,' i.e., a way *through* some kind of natural landscape rather than a path or walkway, the immunity provisions of section 831.4 do not apply." However, the undisputed facts submitted in support of the County's motion for summary judgment establish that the path is set in the natural landscape of the San Bernardino Mountains where the Animal Park is located.

17

There is also no factual dispute that the second factor is satisfied because the evidence conclusively established the walkway was designed for recreational use. Haering argues that the Animal Park's primary purpose is not recreation for visitors to the park, but instead as a shelter for injured and orphaned animals. She concedes, however, that McElroy's testimony was that "the Animal Park was designed and continued throughout the occupancy at Moonridge Road to be a mountain park for the general public to observe the animals amongst the native fauna and flora of the San Bernardino Mountains." Haering presented no evidence to dispute this fact in the trial court. Despite this, Haering argues that "a jury could question the credibility of that statement" and "infer that the design of the surroundings ... has more to do with keeping things low maintenance than it has to do with making [the park] interesting for visitors."

We disagree. There is no question that the Animal Park was created to provide visitors with recreational activity, i.e., viewing the area's native animals in their natural habitat. Indeed, Haering herself testified at her deposition that she visited the Park that day to observe the animals. The fact that the park had the dual purpose of providing care to animals does not negate its recreational purpose. (See *Montenegro, supra*, 215 Cal.App.4th at p. 932 ["The fact that a trail has a dual use—recreational and nonrecreational—does not undermine section 831.4, subdivision (b) immunity."]; *Loeb, supra*, 43 Cal.App.5th at p. 434 [holding that the pathway's dual purpose of providing bathroom access did not negate its use for recreational purposes]; *Hartt v. County of Los Angeles* (2011) 197 Cal.App.4th 1391, 1393, 1399–1400 [affirming summary judgment under trail immunity where bicyclist died by colliding with service vehicle on a "road which connects the upper and lower areas of [a] park" used for both

18

recreation and service vehicle access]; *Burgueno, supra*, 243 Cal.App.4th at p. 1055 [trail immunity applied to path "accessed by university service vehicles and emergency vehicles"].)

Haering also asserts that whether the walkway satisfied the third factor, the purpose of the immunity statute, should have been put to a jury. Specifically, Haering argues that several facts would support a finding that the Animal Park was a commercial operation that does not fit within the policy that animates the recreational trail immunity provided under section 831.4, subdivision (b). In support of this argument, she points to the fact that entrance into the Animal Park is not free; McElroy's statement that the operation "broke even in terms of revenues and costs;" and two provisions in the lease between the County and the property's owners, one requiring the Big Bear Valley Recreation and Parks District to "maintain and repair" the property "as is necessary to keep the [property] in a safe and orderly condition" and another stating that the parties to the lease were each "responsible for providing insurance coverage to protect its own interests and exposures under [the] Lease."[7]

With respect to the fact that the Animal Park charges an entrance fee, we agree with the County that this does not undermine the trial court's legal conclusion that section 831.4 applies because the walkway provided access to a recreational activity. The statute contains no limitation of the immunity when the public entity charges an entrance fee. Further, this argument has been rejected by at least one Court of Appeal in the context of section 831.2. In *Bartlett v. State of California* (1988) 199 Cal.App.3d 392 (*Bartlett*), an ATV

---

7    Haering also points to the fact that the Animal Park was relocated after the fall at issue here took place. We agree with the County that this fact is irrelevant to the determination of whether the recreational trail immunity statute applied at the time of Haering's fall.

rider was injured on the sand dunes in Pismo Beach that were managed by the State. (*Id*. at p. 395.) The Second District affirmed the trial court's order granting summary judgment in favor of the State, finding that the natural conditions immunity of section 831.2 applied. (*Ibid*.)

The court rejected the ATV rider's assertion that the collection of entrance fees by the state created a triable issue of fact as to whether the immunity applied: "Nothing in the language of the statute, its history, nor in the case law suggests that this immunity is conditioned on open and free access to the public property in question or is lost where the property produces revenue for the State." (*Bartlett, supra*, 199 Cal.App.3d at p. 398.) Rather, the court found that "[a] rule that the State loses the natural conditions immunity by charging users or admission fees would conflict with the intent of the Legislature. The Legislature recognized that there are 'limited funds available for the acquisition and improvement of property for recreational purposes,' and that the 'burden and expense of putting such property in a safe condition and the expense of defending claims for injuries would probably cause many public entities to close such areas to public use.' " (*Ibid*.)

Similarly here, the purpose of the recreational trail immunity found in section 831.4—to encourage public recreation—is not upset by the Animal Park's collection of an entrance fee. As in *Bartlett*, charging an entrance fee

20

that allows the Animal Park to maintain its operation and public enjoyment of the park is in harmony, not conflict, with the immunity statute's purpose.[8]

In response to Haering's argument that the provisions of the lease between the County and the property owners raised triable issues of fact as to whether the statute applies, the County asserts this argument was forfeited because it was not raised in the trial court. We agree the arguments are not cognizable on appeal because they were not raised below. (*JRS Products, supra*, 115 Cal.App.4th at p. 178.) However, even if we were to reach the issue, the provisions in the lease that Haering looks to do not establish a disputed issue of fact for the jury's consideration. The lease provisions govern the relationship between the parties to the lease, and

---

[8] Haering also cites *Garcia v. American Golf Corp.* (2017) 11 Cal.App.5th 532 (*Garcia*) to support her argument that generation of revenue by the Animal Park creates a triable issue of material fact for the jury. In *Garcia*, a child being pushed in a stroller on a trail adjacent to a golf course operated by the City of Pasadena was injured by an errant golf ball. (*Id*. at p. 537.) The mother of the child brought suit and the trial court granted summary judgment to the City under the recreational trail immunity statute. In reversing the decision, the Second District concluded that trail immunity was not applicable to the dangerous condition created by the adjacent golf course. (*Id*. at p. 535.) In limiting the immunity in this fashion, the court adopted a "relatedness test" to analyze whether the dangerous condition (i.e., the golf course) was sufficiently related to the trail to extend it immunity. (*Id*. at p. 544.) In concluding the golf course was not sufficiently related, the court looked to the characteristics of the course, including the fact that it was commercially operated and revenue-generating for the City, and that the City had taken significant steps to prevent such injuries in other areas of the course by installing safety nets and placing trees in ways to protect nearby development. (*Id*. at p. 545.)

*Garcia* involved an injury that was caused by a separate, adjacent property and presents a far different scenario from that here, where the injury was the result of the immunized trail itself. We do not agree with Haering that *Garcia* creates a triable issue of fact as to whether the immunity applies in this case.

21

Haering does not explain how the provisions could limit the governmental immunity created by statute. As the County points out, the trail immunity statute contains no language limiting the application of the immunity when insurance is in effect.

Finally, Haering asserts that the fact that the property at issue is not "in its 'natural' state further supports the conclusion that its walkway[]" is not a trail for recreational access. She points to the existence of structures on the property, fencing around its perimeter, animal enclosures, and the existence of bathrooms and utilities on the property. This development does not preclude the application of the recreational trail immunity statute. Rather, "[S]ection 831.4 applies to any trail or path specifically put aside and developed for recreational uses, without regard to its unnatural condition or urban location." (*Montenegro, supra*, 215 Cal.App.4th at p. 931; see also *Astenius v. State of California* (2005) 126 Cal.App.4th 472, 476 ["When the Legislature has intended to limit governmental immunity to unimproved property, it has expressly said so. (See § 831.2 limiting immunity to injuries arising from 'a natural condition of any unimproved public property.') Section 831.4 contains no such limiting language and we decline to add it."].)

In sum, Haering has not shown the existence of triable issues of material fact as to whether the walkway is a trail to access a recreational activity for purposes of section 831.4.

DISPOSITION

The judgment is affirmed.  The costs of appeal are awarded to the Respondents.

McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


O'ROURKE, J.